UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANELLE VERHULST,

      Plaintiff,

v.

      Case No. 1:24-cv-1194
      Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,

_____/

### REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claim for disability insurance benefits (DIB).

Plaintiff filed an application for DIB on December 28, 2021, alleging a disability onset date of November 29, 2020. PageID.32. Plaintiff identified her disabling condition as tendonitis. PageID.227. Plaintiff completed the 12th Grade and had past employment as a general laborer, hand packager, and inspector. PageID.41, 228. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on October 11, 2023. PageID.32-42. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I.    LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision

1

is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  "Substantial evidence, this Court has said, is more than a mere scintilla.  It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence.  *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the [Commissioner] to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . .  physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.    ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of November 29, 2020, and met the insured status requirements of the Social Security Act through December 31, 2025.  PageID.34. At the second step, the ALJ found that plaintiff had severe

impairments of: carpal tunnel syndrome, bilateral; tenosynovitis, bilateral; central sensitization to pain; obesity; depression; and anxiety.  PageID.34.  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.35.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is limited to frequent handling and fingering, bilaterally; frequent crawling; no climbing ladders, ropes or scaffolds; no work at unprotected heights, with moving mechanical parts, or with vibration; and she can carry out very short and simple instructions.

PageID.36.  The ALJ also found that plaintiff was unable to perform any past relevant work. PageID.41.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level.  PageID.41-42.  Based on the testimony of vocational expert (VE), the ALJ found that plaintiff could perform the requirements of unskilled light occupations in the national economy such as housekeeper (350,000 jobs), merchandise marker (225,000 jobs), and assembler (22,000 jobs).  PageID.42.  Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, from November 29, 2020 (the alleged onset date) through October 11, 2023 (the date of the decision). PageID.42.

### III.    DISCUSSION

Plaintiff contends that the ALJ's residual functional capacity (RFC) findings are not supported by substantial evidence, raising three errors:

**A. The ALJ's RFC finding failed to comply with 20 C.F.R. § 404.1520c in addressing the opinions of the Plaintiff's psychologist and the DDS consultants.**

4

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments.  *See* 20 C.F.R. § 404.1545.  It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).  In determining the RFC, the ALJ considers impairments that are both "severe" and "not severe" (*see* 20 C.F.R. § 404.1545) "based on all the relevant medical and other evidence in [the claimant's] case record" (20 C.F.R. § 404.1520(e)).

The applicable regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a).  In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. § 404.1520c(b).  In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and, (5) other factors.  *See* 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency".  20 C.F.R. § 404.1520c(b)(2). The regulations explain "supportability" as, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  The regulations explain "consistency"

as, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2). In addition, the regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record."  20 C.F.R. § 404.1520c(b)(1).

### 1.    Heather O'Brien, MA, LPC, NCC

Ms. O'Brien's July 11, 2023, opinion addressed 16 different areas of plaintiff's mental abilities and aptitudes (§§ A-P) and essentially concluded that plaintiff could not function in the workplace setting.  *See* Exh. 5F (PageID.522-523).  Plaintiff would have "no useful ability to function"[1] in the following: [G] work in coordination with or proximity to others without being unduly distracted; [I] complete a normal workday without interruptions from psychological symptoms; [J] perform at a consistent pace without unreasonable rest periods; and [O] deal with normal work stress.  PageID.522-523.  In addition, plaintiff was "unable to meet competitive standards"[2] in the following: [D] maintain attention for two hour segment; [E] maintain regular attendance and be punctual; [H] make simple work-related decisions; [L] accept instructions and respond appropriately to criticism from supervisors; and [N] respond appropriately to changes in

---

[1]  The form defined "no useful ability to function" as "an extreme limitation, means your patient cannot perform this activity on a regular, reliable and sustained schedule in a regular work setting."  PageID.522.

[2] The form defined "unable to meet competitive standards" as "your patient has noticeable difficulty (e.g., distracted from job activity) from 21 to 40 percent of the workday or work week."  PageID.522.

a routine work setting.  PageID.522-523.  Furthermore, plaintiff was seriously limited"[3] in the following: [A] remember work-like procedures; [B] understand and remember very short and simple instructions; [F] sustain an ordinary routine without special supervision; [M] get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and, [P] be aware of normal hazards and take appropriate precautions.  PageID.522-523.

In addition, plaintiff had: extreme limitations in her ability to interact with others and in maintaining concentration, persistence or pace; and, marked limitations in her ability to understand, remember or apply information, and to adapt or manage herself.  PageID.523.  Finally, Ms. O'Brien provided a narrative which mentioned that plaintiff: has participated in weekly sessions with her since July 20, 2022; continues to complain of depression and anxiety; requests medication reviews; often presents as anxious or tearful during sessions; and, has a hard time completing and managing daily tasks.  PageID.525.

The ALJ acknowledged that "the evidence shows a longitudinal history of complaints related to anxiety and depression."  PageID.38.  However, the ALJ also found that plaintiff's "treatment for the most part was conservative without evidence of crisis intervention, repetitive emergency room visits or inpatient treatment."  PageID.38.

The ALJ considered plaintiff's medical record and made the following observations and findings.  During an office visit on February 9, 2021, plaintiff reported anxiety and depression. PageID.39. Plaintiff smoked marijuana once or twice a day "due to stress associated with her family and financial difficulties".  *Id*.  Plaintiff complained of nausea and her doctor advised her "to stop the use of marijuana as it may cause more nausea and vomiting." *Id*.  Plaintiff occasionally used alcohol.  *Id*.

---

[3] The form defined "seriously limited" as "your patient has noticeable difficulty (e.g., distracted from job activity) from 11 to 20 percent of the workday or work week."  PageID.522.

"Although continuing to report she worried about everything, during an office visit on August 24, 2021, the claimant was noted to have a normal mood and affect, and she was not suicidal." *Id*.  On February 24, 2022, plaintiff reported anxiety, worry and irritability, but her thought process was normal and her affect appropriate. *Id*.  Her symptoms persisted despite a change in medication. *Id*.  On August 26, 2022, plaintiff "reported that counseling was making a big difference." *Id*.

Plaintiff met with Ms. O'Brien for nearly a year. *See* Exh. 17F (PageID.852-897). The ALJ addressed Ms. O'Brien's counseling as follows:

> During an individual psychotherapy session on October 17, 2022, Heather O'Brien, MA, LPC, described the claimant as depressed; however, her mood was normal, psychomotor was appropriate, and social was also appropriate. On October 24, 2022, and December 12, 2022, she remained depressed but appropriate and normal in most areas (17F/61, 63, 47). Although noted to be anxious and depressed on February 6, 2023, her affect and social remained appropriate and normal sensorium with no cognitive problems (8F/39). Despite testimony of difficulties around people, Ms. O'Brien noted the claimant reported going downtown with her daughter and visiting a music store (17F/5), attending a family picnic with a lot of people in the area, and going to the mall without feeling overly anxious in a busy place (17F/7, 31).

PageID.39.

When plaintiff presented for a recheck of depressive disorders on June 29, 2023, her primary medical care provider found that,

> She did not have suicidal thoughts but was noted to have symptoms exacerbated by family stress. She felt her medication with counseling was "ok" although she wished it was better (4F/2). Her affect was appropriate and her thought content was normal as well as her cognitive functioning (4F/3).

*Id*. The provider assessed plaintiff with, "Depression, major, single episode, moderate." PageID.485.

Based on this record, the ALJ addressed Ms. O'Brien's opinion as follows:

Heather O'Brien, MA, LPC, completed a mental treating source statement on July 11, 2023, indicating the claimant had marked and extreme functional limitations. She opined that the claimant had no useful function in various areas of work and would be absent from work more than four days per month. She noted that the claimant continued to report overall wrist/arm pain making it difficult to do daily tasks. She complained of depression and anxiety and had feelings of worthlessness and low self-esteem along with significant social anxiety which affected her ability to go to public places. She has difficulty understanding what is presented to her and is easily overwhelmed by unexpected events. Ms. O'Brian [sic] opined that the claimant would have significant challenges and would not be able to succeed in a work setting, due to her mental health issues, social anxiety, and chronic pain (5F).

I do not find the opinion of Ms. O'Brian [sic] persuasive based on the limitations she assessed are not supported by the claimant's longitudinal treatment history that is overall conservative while the limitations assessed by Ms. O'Brian [sic] are extreme at times and inconsistent with the evidence, most notably on July 3, 2023, where she described the claimant's mood as normal, affect, psychomotor and socially appropriate (17F/1). Documentation by Ms. O'Brian [sic] notes improvement in her symptoms; thus, her opinion does not support the degree of limitation she assessed.

PageID.40.

There is no question that plaintiff has mental limitations.  However, the longitudinal record does not support the extreme limitations as set forth in Ms. O'Brien's opinion.  As discussed, plaintiff noticed improvements with counseling and the medical provider found that plaintiff had normal thought content and cognitive functioning.  The ALJ's evaluation of Ms. O'Brien's opinion is supported by substantial evidence.  Accordingly, this claim should be denied.

### 2. The state agency opinions

Plaintiff contends that the ALJ's stated reasons for discounting the medical opinions are not supported by substantial evidence and that the ALJ failed to explain his deviations from "persuasive" opinions.  *See* Plaintiff's Brief (ECF No. 9, PageID.1367).  The ALJ addressed the state agency opinions as follows:

The State agency psychological consultants assessed a psychiatric review technique for mild limitation in understanding, remembering, or applying

information, interacting with others, and adapting or managing oneself. However, she had a moderate limitation concentrating, persisting, or maintaining pace. Robert Barthaell, Psy.D., [sic] opined that the claimant would be able to focus to complete tasks requiring two to three steps (2A).

On reconsideration, State agency psychological consultant Dyan Hampton-Aytch, Ph.D., assessed that the claimant could complete tasks requiring two to three steps, and have brief and superficial interaction with others in a low stress environment with infrequent simple routine changes (3A).

I find Dr. Barthell's and Dr. Hampton-Aytch's opinion persuasive based on consistency of the limitations with the evidence showing problems with focus and concentration. While Dr. Hampton-Aytch assessed brief and superficial interaction in a low stress environment, the evidence overall does not support more than mild limitation interacting. Thus, I am not persuaded this limitation applies.

PageID.39-40.

The Court agrees with the general proposition that an ALJ can find an opinion persuasive without adopting each part of the opinion. *See, e.g, Wyatt v. Kijakazi*, No. 23-1559, 2023 WL 6629761 at *1 (8th Cir. Oct. 12, 2023) ("The ALJ was not required to adopt the exact limitations set forth in the opinions [he] found persuasive.").  In this regard, some courts take the position that the ALJ should explain a deviation from that otherwise persuasive opinion. *See, e.g., Eric B. v. Kijakazi*, No. CV 22-175 SCY, 2023 WL 5041192 at *5 (D.N.M. Aug. 8, 2023) ("[i]n explicitly finding [the doctor's] opinion persuasive, but then ignoring certain limitations in the opinion without accounting for them in the RFC, the ALJ failed to accurately explain the basis of his opinion").

Here, the Court does not require an explanation for the ALJ's deviation from the persuasive opinion.  Dr. Hampton-Aytch's notes reflect that plaintiff suffered from only mild limitations, stating in part:

The clmt displays mild limitations in social d/t mood lability and anxiety. She would be regarded as mildly limited in Adapt related to her ability to readily adapt to changes in work routines and work contexts. These limitations suggest the clmt retains the ability to meet the basic mental demands of unskilled work.

10

PageID.105.    This finding of mild limitations is consistent with the ALJ's determination and appears inconsistent with the doctor's statement that plaintiff can have only brief and superficial interaction.  Accordingly, this claim of error should be denied.

### B. The ALJ failed to follow SSR 96-3p and failed to include the effects of all Plaintiff's impairments when determining RFC.

### C. The ALJ did not evaluate Plaintiff's symptoms as required by SSR 16-3p and 20 C.F.R. 404.1529(c).

Plaintiff addressed these errors together, contending that "[s]ubstantial evidence does not support the lack of any limitations related to Ms. Verhulst's ability to pay attention, concentrate or persist, or absenteeism, and the findings related to those issues are not supported by the evidence."  Plaintiff's Brief at PageID.1367.  The gist of plaintiff's argument is that "[t]he ALJ did not address Ms. Verhulst's pain on her ability to sustain mental and physical work activity."  Plaintiff's Brief (ECF No. 9. PageID.1371).

While it is well-settled that pain may be so severe that it constitutes a disability, a disability cannot be established by subjective complaints of pain alone.  "An individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of disability."  *Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 529 (6th Cir. 1992), quoting 42 U.S.C. § 423(d)(5)(A) (emphasis added).  Rather, objective medical evidence that confirms the existence of pain is required.  *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-35 (6th Cir.1987).

"Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain."  *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007).

11

> First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms.  Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.  Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions.

*Id.* (internal citations omitted).  *See* 20 C.F.R. § 404.1529 ("How we evaluate symptoms including pain").

Plaintiff met the first part of the analysis because she has underlying medically determinable physical impairments that could reasonably be expected to produce her symptoms, *i.e.*, severe impairments of: carpal tunnel syndrome, bilateral; and tenosynovitis, bilateral. PageID.34.  The ALJ addressed the second part of the analysis by performing an extensive review of plaintiff's medical record and medical opinions. PageID.37-41.  The ALJ addressed plaintiff's treatment for bilateral wrist pain from October 25, 2020, through October 12, 2022.  PageID.37-38.  On June 8, 2022, plaintiff was symptomatic for bilateral forearm and wrist pain.  PageID.38.  However, Christine Bowman, M.D., noted that plaintiff's examination remained "quite benign." *Id.*  Neil Droppers, D.O. found plaintiff's upper extremity strength and electrodiagnostic study normal on July 1, 2022, noting that the findings did not explain her symptomatology.  *Id.*  On October 12, 2022, Dr. Droppers noted that plaintiff was taking naproxen for pain management and referred her to Mary Free Bed's chronic pain program.  *Id.*  However, the ALJ noted that despite this referral and treatment plan "the claimant missed several visits in the pain program" and only attended three of eight pain psychology group sessions.  PageID.38.

After reviewing the record, the ALJ concluded:

12

Based on the foregoing, I find the claimant has the above residual functional capacity assessment, which is supported by evidence of ongoing complaints of pain and numbness in her hands due to central sensitization to pain and tenosynovitis, while retaining strength to perform a range of light exertion. Although struggling at times with family stress, the claimant remained functional without significant treatment for depression and anxiety; thus, limiting her to short and simple instructions, accommodates her limitations with focus and anxiety.

PageID.41.

The ALJ reviewed the medical record and adequately addressed the effect of plaintiff's pain on her ability to sustain mental and physical work activity.  Accordingly, this claim should be denied.

## IV.    RECOMMENDATION

For all of these reasons, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.


Dated: February 19, 2026                                  /s/ Ray Kent
                                                                        Ray Kent
                                                                        United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).